FILED DATE: 1/3/2019 2:59 PM   2014D330769

# ENGAGEMENT AGREEMENT
# DISSOLUTION

This ENGAGEMENT AGREEMENT is made and entered into as of the date set forth opposite the client's signature below, by and between TERI HAGEROTT (hereinafter referred to as the "Client"), and SCHILLER DU CANTO & FLECK LLP (hereinafter referred to as "SD&F") collectively "Parties", pursuant to which Client agrees to retain SD&F and SD&F agrees to represent the Client in connection with the dissolution of his/her marriage, subject to the terms set forth below:

1. **Engagement**. Engagement of SD&F is secured by the payment of a retainer and the execution of this Engagement Agreement. By signing below, the Client acknowledges reading this entire Engagement Agreement, executing it freely and voluntarily, and agreeing to comply with the provisions contained herein (including the provisions of Exhibits "A" and "B," attached hereto).

2. **Term**. This Engagement Agreement shall be applicable as of the time of the Client's initial conference with SD&F and shall terminate thirty (30) days after entry of a Judgment for Dissolution of Marriage or dismissal of the case, unless extended thereafter by the Parties in writing. At all times, however, the Client shall retain the right to terminate SD&F's representation, with or without cause, upon written notice to SD&F. In such case, SD&F shall utilize its best efforts to effect a smooth and timely transition to any successor counsel as designated by Client in writing to SD&F. In accordance with Illinois law, SD&F shall also retain the right to withdraw as the Client's counsel. The time and costs expended by SD&F in effecting a transition to new counsel are deemed to be compensable services rendered to the Client, and the costs are reimbursable costs.

3. **Decision-Making Authority**. It is expressly understood that the final authority to make the decision as to whether to proceed to trial in this case or to settle it through negotiations rests with the Client. SD&F will advise the Client as to its professional opinion respecting settlement; but it is without authority to bind the Client to any settlement agreement without the Client's express approval.

4. **Team Approach**. The underlying objective in staffing a case is to have the work performed at the most appropriate level of expertise and respective billing rate. Accordingly, it is agreed that SD&F shall utilize a team approach to handling the Client's case, which ordinarily involves the utilization of more than one attorney as well as paralegals in the firm. SD&F attorneys discuss issues and work together to develop strategies and litigation plans to promote the Client's best interests. The Client understands that all attorneys' time used in this process, as well as all paralegal, and law clerk time, will be chargeable to the Client.

5. **General Acknowledgments and Understandings**. The Parties understand that the process of resolving matrimonial disputes through negotiation or litigation

2697858_1.docx

**EXHIBIT A**

involves unpredictable objective and emotional obstacles. They further understand that, at the commencement of an engagement, SD&F cannot guarantee any outcome or predict the amount of time required to adequately represent Client's interests. SD&F shall utilize its best efforts in seeking a favorable resolution for the Client in terms of all issues presented and shall strive to represent the Client's interests vigorously and efficiently, with due regard to the high cost of litigation and the projected maximum results achievable under the circumstances.

6.  Fees and Costs.

    A.  General Parameters as to Fees. SD&F agrees to represent the Client, subject to payment of a retainer in the amount of $50,000.00 and subject to the other provisions set forth herein. Particular circumstances in a case may require SD&F to seek additional retainer amounts on an interim basis prior to the conclusion of a case. Client agrees to pay any additional retainer amounts within 14 days of request. SD&F shall bill the Client on a monthly basis for services rendered, all interim billings to reflect hourly rates as set forth in Exhibit "B," attached hereto and revised from time to time as indicated in subparagraph 6(C) herein. The Client shall review each interim bill within fourteen (14) days and bring to SD&F's attention within that time frame any question or possible error. Each interim bill is due and payable within 14 days of receipt or by such date as is otherwise agreed upon by the Client and SD&F in writing. Within this 14 day period, client shall pay all legal fees and costs for which client does not have any questions or has no concerns about possible error.

    Within 14 days of the first to occur of (i) the Client's termination of this Agreement; (ii) the entry of an order allowing SD&F to withdraw as Client's attorneys or (iii) final resolution of the case, SD&F shall render a final bill to the Client. Such final bill will take into account any value related factors, in addition to the hourly rates, as delineated in the Illinois Rules of Professional Conduct (adopted by the Illinois Supreme Court) as being relevant considerations to be included in arriving at a fair and reasonable charge. Such factors include the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, the unique expertise of any SD&F attorney utilized, whether acceptance of the particular employment precluded other employment by the firm, the amounts involved, the results obtained, the time limitations imposed by the client or by the circumstances (including unique time demands), and the experience, reputation, and ability of the lawyer or lawyers performing the services. The final bill will be rendered prior to the entry of a final order or judgment or as soon as practicable thereafter, and payment thereon shall be due upon receipt or by such date as is otherwise agreed upon by the Client and SD&F in writing. (Any payments to third parties processed subsequent to the final bill—e.g., a court reporter's charge for the final hearing—will be covered in a

FILED DATE: 1/3/2019 2:59 PM   2014D330769

FILED DATE: 1/3/2019 2:59 PM 2014D330769

supplemental statement relative to final costs, or, alternatively, bill(s) relative thereto will be sent to you for payment.)

B. <u>Costs</u>. Costs shall include, without limitation, charges for experts, postage, court fees, court reporters and transcript costs, computerized research charges, process server fees, photocopying, telecopying, and extraordinary travel. The Client agrees to pay directly or to pay SD&F for all such costs, which shall be set out in billing statements.

C. <u>Changes to Hourly Rates</u>. Hourly billing rates at SD&F are reviewed annually. Changes in rates, if any, are effective as of July 1st, as to services performed after such date.

D. <u>The Client's Primary Liability</u>. Existing law provides that a client has primary responsibility for payment of his/her own attorneys' fees and costs. In certain circumstances, a court may require a spouse with superior economic resources to contribute towards the payment of fees and costs incurred by the opposing spouse. When appropriate circumstances are present, SD&F may assist Client in seeking such a contribution either at an interim stage of a case or in connection with or subsequent to the final judgment. However, the Client remains primarily liable for the payment of fees and costs incurred pursuant to this Engagement Agreement, and only unless and until a Contribution is received by SD&F from the opposing party is Client relieved of that portion of the liability of the payment of fees and costs. SD&F's services for seeking payment of fees and costs from the opposing party are also compensable services rendered to the Client.

E. <u>Proceedings Regarding SD&F's Fees and Costs.</u>

(i) Section 508(c) of the Illinois Marriage and Dissolution of Marriage Act grants the Client and SD&F the right to a court hearing regarding the amount of SD&F's legal fees. In cases filed in Cook County, a court hearing can only occur after any fee dispute has been submitted to mediation, arbitration, or any other court approved alternative dispute resolution procedure, unless both the Client and SD&F opt out of such a procedure. In cases filed other than in Cook County, a court hearing can only occur after any fee dispute has been submitted to mediation, arbitration, or any other court approved alternative dispute resolution procedure, unless either the Client or SD&F opt out of such a procedure.

(ii) If Client's case is filed in Cook County, Client agrees to opt out of any and all mediation, arbitration, and any other court approved alternative dispute resolution procedure.

FILED DATE: 1/3/2019 2:59 PM 2014D330769

(iii) Both prior to and after executing this Agreement, Client has the right to consult with outside counsel (attorneys who are not affiliated with SD&F) regarding the terms of this paragraph, or any other provisions of this Engagement Agreement.

F. <u>Payments of Fees and Costs Using a Credit Card.</u> As a convenience to our clients, we offer the option of using a credit card to pay outstanding invoices for fees and costs. However, a 2.5% convenience fee will be added in such cases to cover the costs associated with processing such payments. The convenience fee does not apply to payments going into the Client Trust Account for Retainers, Initial Consultations and other trust deposits.

7. <u>U.S. Treasury Department Requirements.</u> As of June 21, 2005, new U.S. Treasury Department requirements, set forth in Circular 230, became effective as to written statements about Federal tax issues. These require that certain written statements contain disclaimers or warnings and you will see such statements in some messages from us including e-mails. Depending upon the components of our representation of you, there may be a need to provide written advice concerning the tax consequences. This may be provided in a formal opinion on all relevant tax issues complying with the Circular 230 rules for "covered opinions", less formal letters or memorandum discussing tax issues, or oral, rather than written advice.

8. <u>Amendment to Engagement Agreement.</u> This Engagement Agreement shall be amended only by written instrument between the Parties; and no amendment may be effected unless the Client is represented by separate counsel, retained for purposes of effectuating the amendment.

9. <u>Severability.</u> The Parties to this Engagement Agreement acknowledge and agree that, if any portion, paragraph, or provision herein is deemed unenforceable, all provisions not deemed unenforceable shall remain in full force and effect.

10. <u>Governing Law.</u> This Agreement shall be governed and interpreted by the laws of the State of Illinois.

FILED DATE: 1/3/2019 2:59 PM   2014D330769

11. **Complete Agreement.** This Engagement Agreement represents the complete agreement of the Client and SD&F regarding the matters set forth herein. There are no other oral or written agreements between the Client and SD&F regarding the matters set forth herein. There are no representations of either the Client or SD&F regarding the matters set forth herein other than those that are expressed in this Engagement Agreement.

FLECK LLP

_____
ADAM POTTER

Date  1/5/2018

_____
TERI HAGEROTT

Date _____

SCHILLER DU CANTO &

By: _____
ERIKA N. WYATT

Date  1/8/18

2697858_1.docx

5

FILED DATE: 1/3/2019 2:59 PM   2014D330769

## EXHIBIT "A"
## STATEMENT OF CLIENT'S RIGHTS AND RESPONSIBILITIES *

(1) WRITTEN ENGAGEMENT AGREEMENT. The written engagement agreement, prepared by the counsel, shall clearly address the objectives of representation and detail the fee arrangement, including all material terms. If fees are to be based on criteria apart from, or in addition to, hourly rates, such criteria (e.g., unique time demands and/or utilization of unique expertise) shall be delineated. The client shall receive a copy of the written engagement agreement and any additional clarification requested and is advised not to sign any such agreement which the client finds to be unsatisfactory or does not understand.

(2) REPRESENTATION. Representation will commence upon the signing of the written engagement agreement. The counsel will provide competent representation, which requires legal knowledge, skill, thoroughness and preparation to handle those matters set forth in the written engagement agreement. Once employed, the counsel will act with reasonable diligence and promptness, as well as use his or her best efforts on behalf of the client, but he cannot guarantee results. The counsel will abide by the client's decision concerning the objectives of representation, including whether or not to accept an offer of settlement, and will endeavor to explain any matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation. During the course of representation and afterwards, the counsel may not use or reveal a client's confidence or secrets, except as required or permitted by law.

(3) COMMUNICATION. The counsel will keep the client reasonably informed about the status of representation and will promptly respond to reasonable requests for information, including any reasonable request for an estimate respecting future costs of the representation or an appropriate portion of it. The client shall be truthful in all discussions with the counsel and provide all information or documentation required to enable the counsel to provide competent representation. During representation, the client is entitled to receive all pleadings and substantive documents prepared on behalf of the client and every document received from any other counsel of record. At the end of the representation and on written request from the client, the counsel will return to the client all original documents and exhibits. In the event that the counsel withdraws from representation, or is discharged by the client, the counsel will turn over to the substituting counsel (or, if no substitutions, to the client) all original documents and exhibits together with complete copies of all pleadings and discovery within thirty (30) days of the counsel's withdrawal or discharge.

(4) ETHICAL CONDUCT. The counsel cannot be required to engage in conduct which is illegal, unethical, or fraudulent. In matters involving minor children, the counsel may refuse to engage in conduct which, in the counsel's professional judgment, would be contrary to the best interest of the client's minor child or children. A counsel who cannot ethically abide by his/her client's directions shall be allowed to withdraw from representation.

(5) FEES. The counsel's fee for services may not be contingent upon the securing of a dissolution of marriage, upon being allocated parental responsibility, or be based upon the amount of maintenance, child support, or property settlement received, except as specifically permitted under Supreme Court rules. The counsel may not require a non-refundable retainer fee, but must remit back any overpayment at the end of the representation. The counsel may enter into a consensual security arrangement with the client whereby assets of the client are pledged to secure payment of legal fees or costs, but only if the counsel first obtains approval of the Court. The counsel will prepare and provide the client with an itemized billing statement detailing hourly rates (and/or other criteria), time spent, tasks performed, and costs incurred on a regular basis, at least quarterly. The client should review each billing statement promptly and address any objection or error in a timely manner. The client will not be billed for time spent to explain or correct a billing statement. If an appropriately detailed written estimate is submitted to a client as to future costs for a counsel's representation or a portion of the contemplated services (i.e., relative to specific steps recommended by the counsel in the estimate) and, without objection from the client, the counsel then performs the contemplated services, all such services are presumptively reasonable and necessary, as well as to be deemed pursuant to the client's direction. In an appropriate case, the client may pursue contribution to his or her fees and costs from the other party.

(6) DISPUTES. The counsel-client relationship is regulated by the Illinois Rules of Professional Conduct (Article VIII of the Illinois Supreme Court Rules), and any dispute shall be reviewed under the terms of such Rules.

* Pursuant to 750 ILCS 5/508(f)                                                                                                         (Updated January 2016)