Atty No. 26828

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:

TERI HAGEROTT,
    Petitioner,

and                               No. 2014 D3 30769

WILLIAM HAGEROTT,
    Respondent.

### FIRST REQUESTS TO ADMIT FACTS

TO:   SEE ATTACHED SERVICE LIST

> If you fail to serve the response required by Illinois Supreme Court Rule 216 within twenty-eight (28) days after you are served with this paper, all facts set forth in the requests will be deemed true and all of the documents described in the requests will be admitted.

SCHILLER DU CANTO & FLECK LLP, pursuant to Illinois Supreme Court Rule 216 and requests that Third Party Respondent, ADAM POTTER ("Adam") admit the truth of the following facts and/or genuineness of the following documents appended hereto:

Fact 1:   ADAM POTTER ("Adam") and his sister, TERI HAGEROTT ("Teri") first consulted with ERIKA WYATT ("Wyatt") of SDF on October 22, 2015 via teleconference.

Response:   Admit.

Fact 2:   Teri and Adam again consulted with Wyatt on December 20, 2017, in SDF's Wheaton office.

Response:   Admit.

Fact 3:   In November 2015, Adam represented to Wyatt that the financial settlement in the dissolution case captioned as *In re the Marriage of Teri Hagerott and William Hagerott*, Cook County Case No. 2014 D3 30769 was 80% done.

Response:   Admit.



Scanned by CamScanner

Fact 4: On March 9, 2019, Teri and Adam told Wyatt in a teleconference that they had executed a written power of attorney making Adam Teri's agent and that Adam had acted in the capacity of Teri's agent since her separation from William Hagerott.

Response: Deny.

Fact 5: Later on March 9, 2019, Wyatt asked Teri for the exact date of the power of attorney that she and Adam had described on the telephone that day.

Response: Deny.

Fact 6: On March 12, 2018, Teri sent an email to Wyatt stating, "I have attached the 2015 Power of Attorney that Adam and I did when leasing my current residence."

Response: Insufficient information, therefore deny.

Fact 5: A true and correct, genuine copy of Teri's email to Wyatt dated March 12, 2018 is attached hereto as Exhibit A.

Response: Insufficient information, therefore deny.

Fact 6: With Teri's March 12, 2018 email to Wyatt referenced in Fact No. 4, she included a copy of a Power of Attorney between Teri and Adam dated April 14, 2015 and the signature page from her lease dated April 24, 2015.

Response: Insufficient information, therefore deny.

Fact 7: A genuine, true and correct copy of the Power of Attorney dated April 14, 2015 that was attached to Teri's March 12, 2018 email is attached hereto as Exhibit B.

Response: Insufficient information, therefore deny.

Fact 8: A genuine, true and correct copy of the signature page from Teri's lease dated April 24, 2015 that was attached to Teri's March 12, 2018 email is attached hereto as Exhibit C.

Response: Admit.

Fact 9: Teri and Adam did not sign the Power of Attorney on April 14, 2015.

Response: Admit.

2

Scanned by CamScanner

Fact 10:  Teri and Adam signed the Power of Attorney in or around January 2018 and backdated the document.

Response: Admit.

Fact 11:  In his deposition in August 2018, Adam disclosed that the Power of Attorney dated April 14, 2015 was actually signed in or around January 2018.

Response: Admit.

Fact 12:  Teri did not disclose to Wyatt until after Adam's deposition on August 13, 2018 that she and Adam had back dated the Power of Attorney.

Response: Deny.

Fact 13:  Based on Teri's lack of candor with Wyatt, on May 9, 2018, Wyatt represented to Judge Bellows in a hearing on Teri's Objections and Motion to Quash Subpoenas that, "Mr. Potter, who is Terry Hagerott's brother, is also her agent. This is pursuant to a written power of attorney that the two of them executed in 2015."

Response: Deny.

Fact 14:  Wyatt did not know on May 9, 2018 that the Power of Attorney that Teri and Adam had backdated was not signed until January 2018.

Response: Deny.

Fact 15:  Teri was present at the hearing before Judge Bellows on May 9, 2018.

Response: Admit.

Fact 16:  Teri made no effort to inform Wyatt or Judge Bellows that the Power of Attorney had actually been executed in 2018 and thereby allowed a misrepresentation to be made to the Court on her behalf.

Response: Deny.

Fact 17:  The misrepresentation regarding the backdating of the Power of Attorney unnecessarily increased fees in this matter based on Teri's lack of candor.

Response: Deny.

Scanned by CamScanner

Fact 18: At no time did Teri or Adam ever dispute a single charge on her bills from SDF.

Response: Deny.

Fact 19: On October 28, 2015, Wyatt sent an email to Teri and to Adam that stated, "the time it takes to finalize, and the amount of legal work it will take to finalize depends in large part on Bill. Our legal system is sadly designed such that if one party wants to drag things out a bit, they do have that luxury. This is particularly true in Cook County where cases in general move much more slowly than they do in the collar counties."

Response: Admit.

Fact 20: On April 13, 2018, Teri received true and complete copies of all of her invoices that were sent to her in February, March and April, 2018.

Response: Insufficient information, therefore deny.

Fact 21: After April 13, 2018, Teri received copies of all of her invoices on a monthly basis..

Response: Insufficient information, therefore deny.

Fact 22: On June 14, 2018, Adam, Teri's agent, offered in an email to have Teri's other brother, Jared, sign as an additional guarantor of Teri's attorneys' fees and costs.

Response: Admit Adam suggested other brother sign as new guarantor, deny Adam's role as Teri's agent.

Fact 23: On September 5, 2018, Adam, Teri's agent, sent an email to Wyatt stating, "I was also looking to add a balloon payment schedule into the agreement for 3 major installments starting in October that leave the balance at $0."

Response: Admit Adam planned balloon payments at closure of divorce, deny Adam's role as Teri's agent.

Fact 24: On October 10, 2018, the day before SDF withdrew its Appearance on Teri's behalf, Teri asked Wyatt if it would be possible to expand the Engagement Agreement to fight Miriam Cooper's fee petition.

Response: Deny.

Fact 25: After SDF filed its Motion to Withdraw on October 10, 2018, Teri asked Wyatt to stay in the case to negotiate the Marital Settlement Agreement.

Response: Admit.

4

Scanned by CamScanner

Fact 26: On October 3, 2018, Wyatt stated in an email to Teri and Adam that, "...judges are always recalcitrant to award fees, and even if Judge Rivera determines that Bill should contribute to your fees, it is entirely up to her what that amount will be. I know we asked for $100K in our contribution petition, but that number is deliberately aggressive."

Response: Admit.

Fact 27: On October 4, 2018, Wyatt stated in an email to Teri and Adam that "While we have asked for $100K in contribution, it is highly, highly unlikely that you would receive anything close to that amount. My estimate at this point, based on the facts as I know them is that you might receive a contribution for between $0 and $25K. Judge Rivera is extremely cognizant of the fact that the entire marital estate has been depleted in this litigation and although we can make a compelling argument that Bill has been the worse actor of the two of you, in my professional opinion, she is going to be reluctant to require him to make a significant contribution toward your fees out of his future income."

Response: Admit.

Fact 28: On October 4, 2018, Adam, Teri's agent, sent an email to Wyatt stating, "...we were anticipating paying around $100,000 in a balloon payment after divorce is finalized and the legal bills stop. We can pay another $10k for October as agreed. We anticipated that the work for reallocation and the yield for deferring fees to trial was to pay you. We would have to enter into a monthly payment plan after the balloon payments."

Response: Admit to email content, deny Adam's role as Teri's agent.

Fact 29: On October 11, 2018, after SDF had been granted leave to withdraw as Teri's counsel, Adam, Teri's agent, sent Wyatt an email that stated:

Aloha,
I just wanted to write and thank you for going with Teri on Thursday and fighting for her.

There is so much that you did but the most important was giving her case the dignity that she needed. Her husband worked so hard while they were together and even harder over the last four years as well as grouped together a cadre of people that were equally driven to strip her and her children of it.

I don't think she would still be here if you did not anchor her down.

We will work our hardest to recover and repay you.

Best,
Adam

Scanned by CamScanner

Response:    Admit to letter content, deny role as Teri's agent.

Fact 29:  As of October 11, 2018, Teri and Adam, were promising to pay SDF's bill in full for the legal services rendered to Teri.

Response:    Deny.

Fact 30:  During the course of SDF's representation of Teri, SDF twelve depositions were taken in this matter. These included the expert deposition of Teri's 604.10(c), the expert deposition of Bill's 604.10(c), Teri's expert deposition of Dr. Gamze, the original 604.10(b), Bill's expert deposition of Dr. Gamze, Teri's and Bill's expert depositions of Dr. Robert Shapiro, the replacement 604.10(b), Teri's and Bill's expert depositions of Dr. Laura Jansons, the depositions of Matt Smith, Teri Hagerott, Adam Potter, William Hagerott and Miriam Cooper.

Response:    Admit to Adam's deposition, insufficient information regarding others' depositions, therefore deny.

Fact 31:  None of Teri's prior counsel took or defended any depositions in this case.

Response:    Admit.

Fact 32:  Teri was given the opportunity every time she came to court to review and approve every order into which she entered throughout SDF's representation of her.

Response:    Deny.

Fact 33:  No agreed orders were entered on Teri's behalf by SDF without her prior review and approval.

Response:    Deny.

Fact 34:  In January 2018, Adam, Teri's agent, represented to Wyatt that, "trial is necessary" and "settlements won't work."

Response:    Admit to phrases being as written, deny role as agent.

Fact 35:  Throughout the course of SDF's representation of Teri, Teri discouraged settlement discussions with opposing counsel and wanted to take her case to trial.

Response:    Deny.

6

Scanned by CamScanner

Fact 36:  SDF motioned for and obtained leave of Court to appoint Dr. Robert Shapiro as the 604.10(b) evaluator to update the parental allocation evaluation report in this matter.

   Response:  Admit.

Fact 37:  After much discussion and approval from Teri and her agent, Adam, Donald Schiller prepared for and argued the hearing on the Motion to Update 604.10(b) Evaluation and To Appoint Dr. Robert B. Shapiro, PhD as 604.10(b) Court Professional.

   Response:  Deny.

Fact 38:  The appointment of Dr. Shapiro marked a turning point for Teri in her dispute over allocation of parental responsibilities because both the original 604.10(b) evaluator and the child representative had recommended an allocation of parental responsibilities that were contrary to Teri's wishes.

   Response:  Deny.

Fact 39:  Teri requested that court reporters be present at each court appearance to document what transpired in court appearances.

   Response:  Deny.

Fact 40:  In addition to Adam, Teri's brother, Jared, and Teri's sister, Joanna Schulsky, have helped fund Teri's divorce case.

   Response:  Deny.

Fact 41:  As of August 28, 2018, Adam Potter had caused to be paid approximately $86,356.00 towards Teri's attorneys' fees and costs, both to SDF and to Teri's multiple prior counsel.

   Response:  Admit.

Fact 42:  As of August 28, 2018, Jared Potter had caused to be paid approximately $78,300.00 towards Teri's attorneys' fees and costs, both to SDF and to Teri's multiple prior counsel.

   Response:  Admit.

Fact 43:  As of August 28, 2018, Joanna Schulsky had caused to be paid approximately $12,000 towards Teri's attorneys' fees and costs, both to SDF and to Teri's multiple prior counsel.

   Response:  Deny.

7

Scanned by CamScanner

**VERIFICATION**

I, Adam Potter, the Third Party Respondent in this matter, have reviewed the above responses to the Requests to Admit served by Schiller, Du Canto & Fleck, LLP, and pursuant to Illinois Supreme Court Rule 216(c), hereby swear that they are accurate to the best of my knowledge and recollection.

_____

Scanned by CamScanner